## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARY JEAN ELICAN, *et al*,

               *Plaintiffs,*

      v.

ALLSTATE INSURANCE COMPANY,

               *Defendant.*

CIVIL ACTION
NO. 17-03105

**PAPPERT, J.**                                                  **December 21, 2017**

### MEMORANDUM

Mary Jean Elican and Tony McCloud sued Allstate Insurance Company in the Philadelphia County Court of Common Pleas asserting in Count I of their Complaint that Allstate breached the terms of an Allstate insurance policy ("the Policy") by failing to pay certain benefits. (Notice of Removal, Ex. A, ¶¶ 9–13, ECF No. 1) [hereinafter Compl.] In Count II, Elican and McCloud allege violations of Pennsylvania's bad faith statute, 42 Pa. C.S.A. § 8371, (Compl. ¶¶ 14–17), while in Count III they contend that Allstate was negligent in not listing McCloud as an insured under the Policy (Compl. ¶¶ 18–27). Allstate removed the case to federal court (ECF No. 1) and filed a Motion for Judgment on the Pleadings (ECF No. 6).[1] Plaintiffs responded (ECF No. 9) and Allstate replied (ECF No. 12). An arbitration hearing is scheduled for January 17, 2018. (ECF

---

[1]      Allstate contends that the proper Defendant is "Allstate Property and Casualty Insurance Company." (ECF No. 1.)

No. 17.)[2]  For the reasons that follow, the Court denies Allstate's Motion, with leave to allow McCloud to amend Count I and Elican and McCloud to amend Counts II and III.

## I

## A

Elican and McCloud, her "long-time, committed partner," live at 6931 Grosbeak Place in Philadelphia, which was damaged by fire on October 15, 2016.  (Compl. ¶¶ 1, 4, 5; Answer, Ex. C.)  After the fire, Plaintiffs sought benefits under the Policy to repair the home and replace Elican and McCloud's personal property.  (Compl. ¶¶ 7, 11.) Allstate inspected the home on October 19, 2016 and prepared an estimate of the cost to repair the home and replace insured personal property.  (Answer ¶ 7, Ex. E.)  Allstate subsequently paid Elican $115,125.40 to repair the home, $160,982.21 for damages to her personal property and $37.784.81 for additional living expenses.  (*Id.*)  Allstate did not pay McCloud for any damage to his personal property, asserting that McCloud is not an insured person under the Policy.  (Answer, Ex. F.)  Elican at some point obtained four estimates, ranging from $310,000 to $341,000, to repair the home.  (Compl. Ex. D.) Allstate did not pay Elican anything further to bridge the gap between its own estimate and those received by Elican.

## B

In her written application for the Policy, Elican indicated several times that she was the only person living in the house.[3]  (Answer, Ex. B.)  She signed the application, affirming that the statements therein were true and in doing so asked Allstate to rely

---

[2]    This case was assigned to Judge Davis and transferred to this Court on October 5, 2017 (ECF No. 15) after his retirement.

[3]    On the application, she stated that there were no additional insureds, there was one adult occupant living in the home, and a total of one resident living in the home.

on her representations when issuing the Policy. (*Id.*) The Policy took effect on June 21, 2012. (Answer, Ex. G.) Allstate subsequently sent Elican the Policy Declarations which, consistent with the application, list only her as the insured. (*Id.*) In 2012, the Policy was updated to reflect new mortgage information (Answer, Ex. H) and increased coverage limits (Answer, Ex. I); Elican remained the only named insured (Answer, ¶¶ 45–54). In 2013, the home's mortgage information was amended again, with Elican again remaining the sole name insured. (*Id.* at ¶¶ 55–58, Ex. J.) Elican renewed the Policy in 2013, 2014, 2015 and 2016. (Answer, ¶¶ 59–70, Exs. K–N.) With each renewal, she received from Allstate the Renewal Declarations listing her as the only named insured. (*Id.*) The Policy in effect on the day of the fire, October 15, 2016, does not indicate that anyone other than Elican was covered. (Answer, Ex. A.)

After the fire, Allstate wrote Elican a letter telling her that McCloud's personal property was not insured because he was not an "insured person" as that term is defined in the Policy.[4] (Answer, Ex. F.) Elican then immediately added McCloud to the Policy and Allstate confirmed the change in an October 20, 2016 Notice (Compl., Ex. A); the Notice contained a Policy Endorsements page listing McCloud as an additional insured, effective as of October 21, 2016. (*Id.*)

## II

A court may grant a motion for judgment on the pleadings if the movant establishes that there are no material issues of fact and that he is entitled to judgment as a matter of law. *Sikirica v. Nationwide Ins. Co.,* 416 F.3d 214, 220 (3d Cir. 2005).

---

[4]     The Policy defines "Insured person(s)" as "**you** and, if a resident of **your** household: a) any relative; and b) any person under the age of 21 in your care." (Answer, Ex. F, ECF page 27.) "You" or "your" is defined as "the person listed under the Named Insured(s) on the Policy Declarations as the insured and that person's resident spouse." (*Id.* at 28.)

When a non-moving party's answer denies a material allegation, that denial creates a question of fact that prevents the Court from granting a motion for judgment on the pleadings. *See Citizens Ins. Co. of Am. v. Selective Way Ins. Co.*, 98 F. Supp. 3d 782, 788 (E.D. Pa. 2015) (citing *Inst. for Scientific Info., Inc. v. Gordon & Breach, Science Publishers, Inc.*, 931 F.2d 1002, 1008 (3d Cir. 1991)). A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(c). In deciding a Rule 12(c) motion, the court may consider the pleadings, any attached exhibits, matters of public record and any undisputedly authentic documents attached to the motion if the plaintiff's claims are based on the documents. *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010) (citation omitted). The court must view the facts and any inferences in the light most favorable to the non-moving party. *Sikirica,* 416 F.3d at 220.

When the defendant's motion contends that the plaintiff failed to state a claim on which relief can be granted, courts assess the claims under a Rule 12(b)(6) standard. *See Atiyeh*, 742 F. Supp. 2d at 595; *Turbe v. Gov't of Virgin Is.*, 938 F.2d 427, 428 (3d Cir. 1991). Under that standard, a plaintiff must articulate enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It is not enough for a plaintiff to allege mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The court "may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009); *see also Iqbal*, 556 U.S. at 678 ("Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

<h1 style="text-align:center">III</h1>

<h1 style="text-align:center">A</h1>

In Count I, Plaintiffs allege that Allstate failed to pay benefits to which they are entitled under the Policy. (Compl. ¶¶ 9–13.) Allstate argues that McCloud does not have standing to allege a breach of the insurance contract because he was not a named insured and thus has no contractual relationship with Allstate.[5] (Mot. ¶ 69.) To state a claim for breach of contract, a plaintiff must plead and prove:

> (1) the existence of a contract to which the plaintiff and defendant were parties;
> (2) the essential terms of the contract;
> (3) a breach of the duty imposed by the contract; and
> (4) that damages resulted from the breach.

*Halstead v. Motorcycle Safety Found., Inc.*, 71 F. Supp. 2d 455, 458 (E.D. Pa. 1999) (citations omitted).

Here, Elican and Allstate are the parties to the contract; McCloud is not. He argues instead that he is an intended third-party beneficiary of the Policy. (Compl. ¶ 4.) Under Pennsylvania law, a third-party beneficiary has standing to recover on a contract if the contracting parties show an intent that the third party is a beneficiary and the intention appears in the contract. *Halstead*, 71 F. Supp. 2d at 460 (E.D. Pa. 1999). The Complaint contains one conclusory statement that "Tony McCloud, the long-time, committed partner of Ms. Elican is also a resident of the Property and is an intended third-party beneficiary under the Policy." (Compl. ¶ 4.) This unsupported

---

[5]     Allstate does not move for a judgment on the pleadings on Elican's breach of contract claim.

assertion is a legal conclusion, insufficient to state a claim.[6]  Additionally, Plaintiffs do

not allege in their Complaint that McCloud is a guest and should therefore be covered

at Elican's option.[7]

## B

In Count II, Plaintiffs contend that Allstate violated 42 Pa. C.S.A. § 8371 by

acting in bad faith when adjusting Plaintiffs' covered loss and refusing to pay benefits

under the Policy.[8]  (Compl. ¶¶ 14–17.)  Pennsylvania federal and state courts have

defined "bad faith" as "[a] frivolous or unfounded refusal to pay proceeds of a policy."

*Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000) (citing

*Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994));

*Atiyeh*, 742 F. Supp. at 598.  To recover on a bad faith claim, a claimant is required to

show by clear and convincing evidence that: (1) the defendant insurer did not have a

reasonable basis for denying the policy benefits; and (2) that the insurer knew or

recklessly disregarded its lack of reasonable basis when it denied the claim.  *Keefe*, 203

F.3d at 225 (further citation omitted).

---

[6]　　The only other allegation that, by a stretch, can be construed to imply that McCloud was a third-party beneficiary is that "Plaintiff clearly specified that the Property would be occupied by Ms. Elican and Mr. McCloud as domestic partners." (Compl. ¶ 20.)  There is no allegation that Allstate intended that McCloud be a third-party beneficiary nor is any intention apparent in the Policy.

[7]　　In their response to Allstate's Motion, Plaintiffs contend for the first time that McCloud should, in the alternative, be covered as a guest.  (Pls. Opp. at ¶ 13, ECF No. 9.)  As an initial matter, the Court may not rely on arguments raised only in the motion papers.  In any event, the facts pled in the Complaint indicate that McCloud is a resident—not a guest.  To be a resident requires some degree of permanency. *Allstate Ins. Co. v. Naskidashvili*, No. 07-4282, 2009 WL 399793, at * 3 (E.D. Pa. Feb. 16, 2009).  When determining whether someone is a resident or a guest, courts look at where an individual sleeps, has meals, receives mail, and stores personal possessions. *Id.*  The Complaint states that McCloud resides at the Property (Compl. ¶ 1), is a resident of the Property (Compl. ¶ 4), that Allstate was informed that the Property would be occupied by him (Compl. ¶ 20) and that his personal property was kept in the home (Compl. ¶ 21).

[8]　　To have standing to pursue a bad faith claim, the party must be an insured or a third-party beneficiary. *See Davin v. Davin,* 842 A.2d 469, 473 (Pa. 2004).  As explained *supra* Section III(A), McCloud is neither.

Other actions by an insurer can also rise to the level of bad faith, such as "lack of investigation into the facts[ ] or a failure to communicate with the insured." *Hamm v. Allstate Prop. & Cas. Ins. Co.*, 908 F. Supp. 2d 656, 668–69 (W.D. Pa. 2012); *Corch Const. Co. v. Assurance Co. of Am.*, No 1250-C, 2003 WL 23473924 (Pa. Commw. Ct. 2003) (Bad faith may occur "when an insurance company makes an inadequate investigation or fails to perform adequate legal research concerning a coverage issue."); *see also Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999). Although an insurer's conduct need not be fraudulent for an insured to recover pursuant to a bad faith claim, mere negligence or bad judgment will not suffice. *Atiyeh*, 742 F. Supp. 2d at 598 (citing *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. Ct. 2004)). A claimant must show that the insurer acted in bad faith based on some motive of self-interest or ill will. *Id.*

Courts in this Circuit have routinely dismissed bad faith claims reciting only "bare-bones" conclusory allegations unsupported by facts sufficient to raise the claims to a level of plausibility. *See, e.g.*, *Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 136 (3d Cir. 2012); *Camp v. New Jersey Manufacturers Ins. Co.*, No. 16-1087, 2016 WL 3181743, at *5–6 (E.D. Pa. June 8, 2016); *Pasqualino v. State Farm Mut. Auto. Ins. Co.*, No. 15-0077, 2015 WL 3444288 (E.D. Pa. May 28, 2015).

### i

Plaintiffs allege that Allstate acted in bad faith when it sent a letter containing false information to the Pennsylvania Insurance Department ("PID"). (Compl. ¶ 16(b)-(c)). They rely on a February 20, 2017 letter from Allstate's Claims Service Leader, Jeff Markle to the PID. (Compl., Ex. C.) Specifically, Elican and McCloud contend that in

this letter, Allstate incorrectly informed the PID that the Plaintiffs included the cost of

items that were not in their home at the time of the fire in their property damage

estimates.  (Compl. ¶ 16(b).)  Plaintiffs also argue that Markle's letter misrepresented

the status of the claims dispute when it stated that the parties agreed on the amount of

loss and that the matter was closed (Compl. ¶ 16(c)).  They cite to an undated letter

that Elican sent to Alan Duddy of Allstate discussing this disagreement and assert that

this letter shows that Allstate was aware that the parties did not agree on the amount

of the loss.  (Compl. ¶16(c), Ex. D.)  The Complaint does not specifically allege when

Elican sent her letter to Mr. Duddy.  Even if she did so prior to Mr. Markle's letter to

the PID, there is no factual support for Plaintiffs' allegation that Allstate acted in bad

faith based on a motive of self-interest or ill will rather than mere negligence when it

sent the letter to PID.[9]

---

[9]     Allstate, relying on 40 P.S. § 1171.6, argues that any correspondence between Allstate and
the PID is privileged.  (Mot. ¶ 47.)  Section 1171.6 provides:

> There shall be no liability on the part of and no cause of action of any nature shall
> arise against the insurance commissioner, any insurer, the authorized
> representatives, agents and employees of either, or of any firm, person or corporation
> furnishing to the insurer information as to reasons for cancellation or refusal to
> renew for any statement made by them in complying with this act or for providing
> information pertaining thereto.

Elican and McCloud argue that this statute applies only to information "as to reasons for
cancellation of a Policy or refusal to renew a Policy" and that Allstate's letter is not
privileged.  (Pls. Opp. at 3.)  As Allstate points out, there have been few cases interpreting
Section 1171.6.  In *DeMoss v. Metro. Life Ins. Co.*, 586 F. Supp. 1571, 1574 (W.D. Pa. 1984),
the court noted that Pennsylvania insurance laws are meant to be liberally construed to
affect their purpose.  The court interpreted Section 1171.6 to mean that an insurer should
not be subject to liability for any statement made in compliance with the Unfair Insurance
Practices Act.  *See id.*  Section § 146.5(b) of the Unfair Insurance Practices Act requires an
insurer, upon receiving an inquiry from the PID regarding an insurance claim, to respond
within fifteen days.  After Allstate received an inquiry regarding the claim, Allstate sent the
letter that is the focus of this dispute to the PID, in compliance with Section 146.  (Compl.,
Ex. C.)  Because the allegations are in any event insufficient to state a claim for bad faith,
the Court need not address this argument.

## ii

Plaintiffs also allege that Allstate acted in bad faith when it refused to obtain an appraisal. (Compl. ¶ 16(d).) Their argument is misplaced. The Policy states that if the parties to the Policy do not agree on the amount of loss, either party *may*, but is not required, to make a written demand for an appraisal. (Answer, Ex. A, 43, ECF No. 4-1.) Elican and McCloud do not allege that they made a written demand for an appraisal nor do they state any other facts to support their contention that Allstate's failure to demand an appraisal was in bad faith. *See Cohen v. State Auto Prop. & Cas. Co.*, No. 00-3168, 2001 WL 120145, at *3 (E.D. Pa. Feb. 8, 2001).

## iii

Finally, Elican and McCloud cite numerous examples of what they contend constitute failures by Allstate to investigate, evaluate, and communicate with them about their claims.[10] (Compl. ¶ 16(a), (e)-(p)). There are no facts alleged to support these allegations and the Court is unable to give them any weight. *See Mattia v. Allstate Ins. Co.*, No. 14-2099, 2014 WL 2880302, at *4 (E.D. Pa. June 24, 2014) (Plaintiffs must "describe who, what, where, when, and how the alleged bad faith conduct occurred." (citation omitted)).

---

[10] Specifically, Plaintiffs allege that Allstate sent correspondence to them falsely representing that Plaintiffs were not entitled to benefits, failed to complete a prompt and thorough investigation, failed to pay benefits in a prompt and timely manner, failed to objectively evaluate their claim, conducted an unfair and unreasonable investigation, asserted policy defenses without a reasonable basis, misrepresented facts or policy provisions relating to coverages at issue, failed to keep them advised as to the status of the claim, unreasonably valued the loss and failed to fairly negotiate its amount, failed to promptly explain the basis for the denial, unreasonably withheld benefits, acted unreasonably in response to the claim and unreasonably forced them to file this lawsuit. (Compl. ¶ 16(a), (e)-(p).)

## C

In Count III, Elican and McCloud contend that Allstate, through its agent,

Donna O'Sullivan, was negligent in issuing a policy which did not insure McCloud's

personal property.  (Compl. ¶ 26.)  To state a claim for negligence, Plaintiffs must show

that O'Sullivan had a duty to comply with an insurance agent's standard of conduct,

she breached that duty, the breach caused the injury, and Plaintiffs suffered a loss.

*Phillips v. Cricket Lighters,* 841 A.2d 1000, 1008 (Pa. 2003).  Under Pennsylvania law,

an insurance agent owes an insured a duty "to obtain coverage that a reasonable and

prudent professional insurance agent would have obtained under the [same]

circumstances."  *Foremost Ins. Co. Grand Rapids, Michigan v. Himmel*, No. 09-cv-

02575, 2010 WL 11549852, at *3 (M.D. Pa. July 8, 2010) (citations omitted).  If an

insurer *affirmatively states* that she will obtain or renew an insurance policy under

circumstances which lull the insured into the belief that the insurance has been

obtained but has not actually been, an insured may prevail against the insurer.  *See*

*Riedi v. GEICO Cas. Co.*, No. CV 16-6139, 2017 WL 2957831, at *4 (E.D. Pa. July 11,

2017) (citing *Avondale Cut Rate, Inc. v. Assoc. Excess Underwriters, Inc.*, 178 A.2d 758,

760 (Pa. 1962)).  Further, when an insurer issues a policy that is different from what

the insured *requested* and paid for, the insurer has a duty to advise the insured of the

difference between the policy and what was requested.  *See Pressley v. Travelers*

*Property Cas. Corp.*, 817 A.2d 1131, 1140 (Pa. Super Ct. 2003) (citing *Tonkovic v. State*

*Farm Mut. Auto. Ins. Co.*, 521 A.2d 920, 925 (Pa. 1987)).

In *Pressley*, the plaintiff specifically instructed the agent to add her mother to

the plaintiff's underinsured motorist policy, requesting that her mother be insured to

the same extent as the plaintiff. 817 A.2d at 1134. The agent stated that she would

add the plaintiff's mother to the policy, with the exact same coverage. *Id.* at 1135. The

agent did not do so. After the plaintiff's mother was killed in a car accident, the

insurance company refused to pay any benefits and the plaintiff sued seeking a

declaration that her mother was covered under the policy. The insurer argued that the

policy expressly excluded coverage for the plaintiff's mother. The trial court ruled in

the plaintiff's favor and the Superior Court affirmed, holding that the plaintiff was

entitled to benefits because she did not receive the specific coverage she requested and

that the agent represented would take effect. *Id.* at 1133, 1140, 1142.

Here, Elican and McCloud do not allege that either of them specifically asked

O'Sullivan to provide a policy that covered both Elican and McCloud's personal

property. Instead, they allege that when "[p]rocuring the Policy, Plaintiff [singular]

clearly specified that the Property would be occupied by Ms. Elican and Mr. McCloud as

domestic partners," therefore, O'Sullivan should have accordingly made sure McCloud's

personal property was insured. (Compl. ¶¶ 20–21.) That is far different than alleging

that Elican specifically requested that McCloud's property come within the Policy's

coverage and O'Sullivan affirmatively telling her that it would. In addition, a

"customer is presumed to know what it needs or wants" and an agent does not have a

"duty to advise the insured as to the type or amount of available coverage, or to obtain

total/full coverage, or explain the policy and its coverages and/or exclusions, absent a

special relationship." *Stern Family Real Estate Partnership v. Pharmacists Mut. Ins.

Co.*, No. 06-130, 2007 WL 951603, at *3 (W.D. Pa. Mar. 27, 2007). In her application,

Elican told Allstate that one person resided in the home and that she was requesting

insurance coverage for that one person—herself.  *See* (Answer ¶ 20, Ex. B.)  That is exactly what Allstate gave her.

Finally, Elican and McCloud allege that Allstate was negligent because O'Sullivan "represented that the coverages afforded by the policy were adequate to protect Plaintiff [singular] from loss from all reasonably anticipated perils."  (Compl. ¶ 22.)  Given that Elican is the only person who applied for the Policy, this allegation logically applies to her.  In fact, the Policy did protect Plaintiff (singular) from reasonably anticipated perils.  Allstate has paid Elican over $313,000 to compensate her for the damage to her home and personal property and additional living expenses. (Answer ¶ 7, Ex. E.)

**D**

Federal Rule of Civil Procedure 15 permits a party to amend its pleading with the court's permission.  FED. R. CIV. P. 15(a)(2).  Courts should grant leave to amend when justice requires but should not if it would cause undue delay or undue prejudice, the request is in bad faith or a result of dilatory conduct, or if amendment would be futile.  FED. R. CIV. P. 15(a)(2); *Bell v. Allstate Ins. Co.*, No. 03-4482, 2004 WL 614828, at *1 (E.D. Pa. Feb. 17, 2004).  An amendment is futile if as amended, a complaint still fails to state a claim.  *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).  When assessing whether an amendment would be futile, the court should apply the same legal sufficiency standard as it applies under Rule 12(b)(6).  *Id.*

Counts I, II, and III are dismissed with leave to amend.[11]  Plaintiffs may amend Count I if they can allege facts that would state a claim that McCloud was a beneficiary of Elican's contract with Allstate and they may amend Counts II and III to allege facts sufficient to raise their bad faith and negligence claims to a level of plausibility.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[11]      *See Bloomfield v. Wissinoming Volunteer Trust Aid Corps, Inc.*, No. 15-1013, 2015 WL 4077048, at \*6 (E.D. Pa. July 6, 2015) ("Because the Court will permit amendment, at this time it would be premature for the Court to award judgment as a matter of law.") (citations omitted).